BRANDON C. FERNALD (BAR NO. 222429)
*brandon@fernaldlawgroup.com*
PAUL W. SANDE (BAR NO. 296357)
*paul@fernaldlawgroup.com*
**FERNALD LAW GROUP LLP**
510 W 6th St, Suite 700
Los Angeles, California 90014
Telephone: (323) 410-0300
Facsimile: (323) 410-0330

AARON P. BRADFORD (*pro hac vice pending*)
**BRADFORD, LTD**
2701 Lawrence Street, Suite 104
Denver, Colorado 80205
Telephone: (303) 325-5467
Facsimile: (844) 406-5294
E-Mail: aaron@APB-law.com

Attorneys for Plaintiff PILOT, INC.,

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PILOT, INC., a California Corporation,<br><br>Plaintiffs<br><br>v.<br><br>ANKER TECHNOLOGY CORPORATION, a Delaware Corporation,<br><br>Defendants. | CASE No. ______________<br><br>**COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND** |

COME NOW Pilot, Inc ("Pilot" or "Plaintiff") for its Complaint against Defendant Anker Technology Corporation ("Anker" or "Defendant"), through counsel, BRADFORD, LTD, assert the following claims:

**THE PARTIES**

1. Plaintiff Pilot, Inc., is a California corporation, duly authorized and in good standing with the State of California.

2. On information and belief, Defendant Anker is a Delaware corporation having its principal place of business at 3291 Keller St., Santa Clara, CA 95054.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to Title 28, Sections 1331, 1332 and 1338(a) of the United States Code because this action arises under the Federal Patent Statute.

4. Anker sells its products, including the infringing products detailed in this Complaint, at Walmart. As a result, this Court has personal jurisdiction over Anker as it transacts business in the State of California and in this Judicial District, as well as throughout the United States by (i) conducting at least a portion of the infringement alleged in California, or (ii) regularly doing or soliciting business in California, maintaining continuous and systematic contacts in California, purposefully availing itself of the privileges of doing business in California, and/or deriving substantial revenue from goods or services provided to individuals in California, or some combination of the foregoing.

5. Venue is proper in this Judicial District pursuant to Title 28, Sections 1391 and 1400 as Anker resides in this Judicial District. In addition, Pilot is informed and believes that Anker has committed acts of infringement and has a regular and established place of business in the State of California and this Judicial District.

## GENERAL ALLEGATIONS

6. Pilot Inc. is a market leader in the design, manufacture, distribution and sale of automotive accessories and consumer electronics. Formed over 30 years ago by Mr. Calvin Wang, Pilot has developed strong relationships with automotive retailers and large retail establishments as a source for quality and innovative automotive lighting, interior and exterior car and truck accessories, replacement parts, ornaments, towing accessories and a variety of consumer electronics such as cameras, smart phone accessories and ornamental lighting. Inspired by the American love affair with the automobile, Pilot provides consumers across the United States with the items necessary to operate, repair, upgrade or service their automobile.

7. In addition to serving as President, Mr. Calvin Wang leads Pilot's new product development efforts. Based upon his conception, design and direction, Mr. Wang developed a new and novel car battery jump starter system that safely and quickly delivered a charge to an automobile battery. The design was directed to light weight, lithium battery systems that could be stored in glove boxes or other areas in a car during non-use, during which a risk of unintended release of charge was feared. As claimed and described, Mr. Wang's design featured a configuration of modules and a microcontroller that prevent a load unless certain circumstances exist, thereby preventing unwanted or dangerous discharges when the mobile battery charging unit is stored.

DOCUMENT PREPARED
ON RECYCLED PAPER




8. On April 28, 2014, Mr. Wang filed Chinese Application Number 2014 2 0212173 ("the '173 application") which ultimately issued. Thereafter, Mr. Wang applied for United States Patent Number 9,525,297 (the "'297 patent"), entitled "Automobile Charger," which was duly and lawfully issued by the United States Patent and Trademark Office ("PTO") on December 20, 2016. A copy of the '297 Patent is attached hereto as "Exhibit A" and incorporated herein.

9. The '297 patent describes and claims, *inter alia*, an automobile charging device with a safe power supply that allows for quick charging. Namely, the patented features ensure that the mobile battery does not discharge unless the cables are properly affixed to the battery and properly aligned with the vehicle's battery. This patented safety mechanism has been critical to the success of Pilot's commercial embodiment and the infringing products that followed.

10. Calvin Wang assigned all rights to the '297 Patent to Pilot.

11. Pilot is the owner by assignment of the entire right, title, and interest in and to the '297 patent, including the sole and undivided right to sue for infringement.

12. After Mr. Wang filed the '173 application, Pilot offered the LIGHTNING Power Jump Starter which featured the technology that would ultimately be reflected in the '297 patent.




13. When building the commercial embodiment of the ‘297 patent, Mr. Wang directed that the microprocessor and modules described in Claims 1-6 of the ‘297 patent be positioned in a control housing located on the jumper cables.





DOCUMENT PREPARED
ON RECYCLED PAPER

14. Lowe's Companies, Inc. was the first major customer for the "LIGHTNING" Power Jump Starter, accepting delivery of product in September of 2014. In 2014, Pilot enjoyed over $10 million in sales.

15. The patented safety mechanisms were essential to the success of the overall product and presented the reason why consumers (including retail buyers and end consumers) preferred LIGHTNING over other lithium jump starters.

16. Anker, itself and through parents, divisions, subsidiaries and/or agents are engaged in the business of manufacturing, marketing, distributing and selling a large variety of consumer goods and industry equipment, including portable automobile charging devices.

17. The Anker "Portable Jump Starter," is sold by Anker through third-party retailers such as Walmart and Amazon. The Anker Portable Jump Starter is featured on www.Walmart.com and www.Amazon.com.




18. In order to prevent unintended discharge, Anker positioned a safety switch on the jumper cables as claimed by Mr. Wang in the '297 patent. Anker explicitly advertises this



DOCUMENT PREPARED
ON RECYCLED PAPER

"Advanced Safety" feature on its website: "We've taken safety to another level, protecting you and your devices against surges and short circuits, as well as inverse current." See https://www.anker.com/products/variant/Compact-Car-Jump-Starter-and-Portable-Charger/A1501011.

19. Based upon an evaluation of the printed circuit board and the product specification sheets for each module utilized by Anker in constructing its system, Anker adopted the same electrical configuration as employed by Pilot and as patented by Mr. Wang in the '297 patent.




20. Like Pilot, Anker's PCB utilizes a safety switch, as well as a 12 V/200A jumping port with 10000mAh of capacity to jump start most standard 12v automotive vehicles.

21. The Anker Portable Jump Starter safety switch is a copy of the electrical configuration patented by Mr. Wang and implemented by Pilot in the LIGHTNING Jump Starter safety switch.







22. Based upon a careful inspection of the Anker configuration and operation, the Anker Portable Jump Starter infringes, both literally and under the doctrine of equivalents, at least Claim 1 of the ‘297 patent as depicted below:



DOCUMENT PREPARED
ON RECYCLED PAPER




**FIGURE 1**: Anker Infringement of Claim 1 of the ‘297 patent

**<u>FIRST CLAIM FOR RELIEF</u>**
**Patent Infringement**

23. Pilot incorporates and restates the foregoing allegations as set forth above as though fully set forth herein.

24. The ‘297 Patent is non-obvious as defined in 35 U.S.C. 103.

25. The ‘297 Patent is not subject to prosecution history claim disclaimers.

26. The ‘297 Patent covers the following invention:

> A novel automobile charger which comprises a direct current voltage supply, wherein a positive pole of the direct current voltage supply is connected with one end or lead of a DC to DC module, one end of a battery voltage detection module and one end of a load module simultaneously, while a negative pole of the direct current voltage supply is connected with another end of the DC to DC module, one end of a microcontroller, one end of an automobile start control module and another end of the battery voltage detection module simultaneously. A third end of the DC to DC module is connected with another end of the microcontroller. Other three ends of the microcontroller are connected with the third end of the battery voltage detection module, another end of the automobile start control module and one end of a load detection module respectively. Another end of the load detection module is connected with a third end of the automobile start control module and another end of the load module simultaneously.



DOCUMENT PREPARED ON RECYCLED PAPER

27. The ‘297 Patent specifically claims:

> 1. A novel automobile charger which comprises a direct current power supply comprising:
>
> a positive pole of the direct current voltage connected with a first lead of a DC to DC module, a first lead of a battery voltage detection module, and a first lead of a load module simultaneously,
>
> a negative pole of the direct current power supply connected with a second lead of the DC to DC module, a first lead microcontroller, a first lead of an automobile start control module and a second lead of the battery voltage detection module simultaneously;
>
> a third lead of the DC to DC module connected with a second lead of the microcontroller, and
>
> three additional leads of the microcontroller connected with a third lead of the battery voltage detection module, a second lead of the automobile start control module and a first lead of a load detection module respectively,
>
> wherein a second lead of the load detection module is connected with a third lead of the automobile start control module and a second lead of the load module simultaneously;
>
> the load module including an automobile storage battery and an automobile engine is located on one end of an automobile.

28. The ‘297 patent provides to Pilot the exclusive right to make, use, and sell products and methods covered by the claims of that patent, as set forth in Exhibit A.

29. Since at least December of 2016, and likely earlier, Anker, and/or its agents, were manufacturing, distributing, marketing and selling the Anker Portable Jump Starter through Anker’s distribution channels throughout the United States.

30. Anker sells the Anker Portable Jump Starter to retailers such as Walmart and Amazon, who resell the product for approximately $79.99.

31. Through instruction manual, videos, packaging and other promotional materials, Anker instructs its users to utilize the Anker Portable Jump Starter with automobile engines.

32. As depicted in Figure 1, the Anker Portable Jump Starter and the accompanying product specification sheets reveal that the Anker’s Accused Products contain the following elements:



DOCUMENT PREPARED ON RECYCLED PAPER

a. A novel automobile charger comprised of a direct current power supply.

b. This power supply comprised of a positive pole of the direct current voltage that connects with a first lead of a DC to DC module, a first lead of a battery voltage detection module, and a first lead of a load module simultaneously,

c. a negative pole of the direct current power supply that connects with a second lead of the DC to DC module,

d. a first lead microcontroller,

e. a first lead of an automobile start control module and a second lead of the battery voltage detection module simultaneously;

f. a third lead of the DC to DC module that connects with a second lead of the microcontroller, and three additional leads of the microcontroller that connects with a third lead of the battery voltage detection module,

g. a second lead of the automobile start control module and a first lead of a load detection module respectively,

h. wherein a second lead of the load detection module connects with a third lead of the automobile start control module and a second lead of the load module simultaneously;

i. the load module including an automobile storage battery and an automobile engine located on one end of an automobile.

33. The Anker Portable Jump Starter contains each of the claim elements, or substantial equivalents thereto, of Claim 1 of the ‘297 patent and is thus an infringing product.

34. Consistent with 35 USC § 287, Pilot has marked, or caused to be marked, all of relevant products with the ‘297 patent.

35. Anker is infringing, literally or under the doctrine of equivalents, the '297 Patent by, *inter alia*, manufacturing, distributing, advertising, marketing and selling the Anker Portable Jump Starter.

36. Anker has induced others to infringe the ‘297 patent through its published instruction manual, videos, packaging and other promotional materials.

37. Any infringement that occurs following receipt of this complaint will constitute deliberate, willful, and intentional infringement with full knowledge of the existence and validity of the '297 Patent.

38. As a direct and proximate result of Anker's infringement of the '297 Patent, Pilot has suffered and, unless Anker is enjoined from further sale of its Accused Products, will continue to suffer damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
## Injunction

39. Pilot incorporates and restates all allegations set forth above as though fully set forth herein.

40. As a direct and proximate result of Anker’s actions of infringing upon the '297 Patent, Pilot has suffered, and will continue to suffer, irreparable harm. Anker’s open and notorious infringement of the '297 Patent has fundamentally undermined Pilot’s ability to commercialize its invention or to otherwise enjoy the benefit of its federally issued patent rights, and has prevented Pilot from enjoying the benefit of its exclusive rights to the '297 Patent.

41. Pilot has no adequate remedy at law if Anker continues to infringe upon the ‘297 Patent.

DOCUMENT PREPARED
ON RECYCLED PAPER

42. Pilot has suffered, and will continue to suffer, irreparable harm and damage unless preliminary and final injunctions are issued enjoining Anker from infringing upon the ‘297 Patent.

43. Pilot will likely prevail on the merits of their case at trial.

**WHEREFORE**, Pilot prays for judgment against Anker as follows:

A. Adjudging that the '297 Patent has been infringed by Anker;

B. Awarding Pilot a preliminary and permanent final injunction against continuing infringement by Anker;

C. Ordering an accounting of Anker’s sales, profits, cost of goods sold and other relevant financial information as it relates to Anker’s infringing products as specified in this Complaint;

D. Awarding Pilot damages against Anker in an amount adequate to compensate Pilot for Anker’s infringement, including lost profits through infringement and price degradation and, at the very least, an amount not less than a reasonable royalty, together with interest and costs;

E. Awarding Pilot an additional sum on account of the willful, intentional and deliberate character of Anker’s infringing acts pursuant to 35 U.S.C. § 284;

F. Awarding Pilot reasonable attorney fees and costs against Anker; and

G. Granting Pilot all other legal and equitable relief for which Pilot is entitled.

**DEMAND FOR JURY TRIAL**

Pilot hereby demands a trial by jury on all claims triable to a jury.



DOCUMENT PREPARED
ON RECYCLED PAPER

DATED: August 22, 2017

BRANDON C. FERNALD
PAUL W. SANDE
**FERNALD LAW GROUP LLP**

By: *<u>/s/ Brandon C. Fernald</u>*________
Brandon C. Fernald

Attorneys for Plaintiff PILOT, INC.,